FILED

2010 Oct-29  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHOICE HOTELS** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **5:10-cv-01655-AKK** |
| | ) | |
| **MINESH MOHAN and** | ) | |
| **PRAKASH PATEL,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Choice Hotels International, Inc. ("Plaintiff") filed this suit against Defendants Minesh Mohan and Prakash Patel ("Defendants") on June 23, 2010. Doc. 1.  Plaintiff served Defendants with the summons and a copy of the complaint, (doc. 3), but neither Defendant answered or otherwise responded. Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a), (doc. 5), which the Clerk of Court entered on August 9, 2010, (doc. 6). Plaintiff now moves for a default judgment against Defendants under Federal Rule of Civil Procedure 55(b).  Doc. 9; Doc. 10.

## I.     FACTUAL BACKGROUND

Plaintiff is a hotel franchisor that offers "lodging services under a family of ECONO LODGE marks."  Doc. 1 ¶¶ 11, 16.  Plaintiff owns several United States Trademark Registrations of its ECONO LODGE family of marks.  *Id*. at ¶ 17. Specifically, Plaintiff owns the following active, valid, and enforceable United States Trademark Registrations: (1) Registration No. 813,642 ("the '642 Registration") for the mark ECONO LODGE for use in connection with the provision of motel services; (2) Registration No. 1,799,814 ("the '814 Registration") for the mark ECONO LODGE + Design for use in connection with the provision of hotel and motel reservation services; (3) Registration No. 2,178,518 ("the '518 Registration") for the mark ECONO LODGE for use in connection with the provision of hotel and motel services and for use in connection with rendering technical assistance in the establishment and/or operation of hotels and motels; (4) Registration No. 2,878,530 ("the '530 Registration") for the mark ECONO LODGE INN & SUITES for use in connection with the provision of hotel and motel services; (5) Registration No. 3,489,688 ("the '688 Registration") for the mark E ECONO LODGE + Design for use in connection with the provision of hotel and motel services, hotel and motel reservations for others, and online hotel and motel reservation services for others;

(6) Registration No. 3,522,065 ("the '065 Registration") for the mark E ECONO LODGE + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; (7) Registration No. 3,522,067 ("the '067 Registration") for the mark E ECONO LODGE INN & SUITES + Design for use in connection with the provision of hotel and motel services, hotel and motel reservations for others, and online hotel and motel reservation services for others; (8) Registration No. 3,522,199 ("the '199 Registration") for the mark E ECONO LODGE INN & SUITES + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservations for others. *Id*. ¶¶ 18-30; Doc. 1-1 at 1-17.

On September 28, 2006, Plaintiff entered into a franchise agreement with Defendants to permit them to operate an ECONO LODGE hotel franchise at 1401 E. Willow Street, Scottsboro, Alabama 35768, (doc. 1 ¶ 31; Doc. 1-1 at 19-41), which is in the Northern District of Alabama, making venue proper in this court. The franchise agreement licensed the ECONO LODGE family of marks, listed above, to Defendants for as long as the agreement remained in effect. Doc. 1 ¶ 32. The franchise agreement provided that Plaintiff could terminate the agreement if Defendants failed to meet their payment obligations. *Id*. ¶ 33. Furthermore, in the

3

event of termination, the franchise agreement provided that Defendants must
"[i]mmediately discontinue all use of the Marks, or any work or mark similar to
the Marks, and refrain[] from using the marks to identify the Hotel." *Id.* ¶ 34;
Doc. 1-1 at 26.

On August 3, 2009, Plaintiff issued a Notice of Default to Defendants,
stating that they were in default based on their failure to pay (1) monthly franchise
fees, (2) service charges, and (3) travel agent commission fees.  Doc. 1 ¶ 35; Doc.
1-1 at 43.  The Notice further stated "if all past due fees and amounts described in
this letter are not paid **within 10 days** of the date of this letter . . . [Plaintiff] may
terminate the Franchise agreement . . . ."  Doc. 1 ¶ 37; Doc. 1-1 at 44 (emphasis in
original).

Defendants did not cure the default, and Plaintiff issued a Notice of
Termination on September 2, 2009, which stated:

> Franchisees' use of Choice's proprietary marks, including, but not
> limited to, the trade name and service mark Econo Lodge Inn &
> Suites®, must cease immediately.  Franchisees' continued use of
> Choice's proprietary marks in connection with the above-referenced
> hotel will constitute trademark infringement for which Franchisees
> will be liable to Choice for additional damages under the Agreements
> and the Lanham Trademark Act of 1946 and for which Choice may
> seek injunctive relief.  We hope that it will not be necessary to do so,
> but are prepared to act accordingly if you fail to timely comply with
> the post-termination obligations of the Franchise Agreement.

4

Doc. 1 ¶¶ 39-42; Doc. 1-1 at 46.  The Notice further demanded that Defendants

pay the $47,218.12 amount that they owed.  Doc. 1 ¶¶ 44-45; Doc. 1-1 at 46-47.

Defendants did not comply.  Doc. 1 ¶ 46.

On October 15, 2009, Plaintiff sent another letter stating that it "has learned

from its field representative in Alabama that . . . you continue to make widespread

use of the ECONO LODGE INN & SUITES® hotel marks in, around, and in

publicity for, your hotel."  Doc. 1 ¶¶ 47-48; Doc. 1-1 at 51.  Plaintiff stated that it

considered Defendants' continued use of the marks trademark infringement and

requested that Defendants provide written and photographic evidence that they

had removed all marks.  Doc. 1 ¶¶ 49-50; Doc. 1-1 at 51.  Defendants did not

comply.  Doc. 1 ¶ 51.

On April 23, 2010, Plaintiff received further photographic evidence that

Defendants continued to use the ECONO LODGE family of marks in connection

with the provision of lodging services.  *Id.* ¶¶ 52-53.  Thereafter, Plaintiff initiated

this action.

## II.    ANALYSIS

The court first determines whether the allegations of Plaintiff's complaint

state a claim for (1) federal trademark infringement, (2) federal unfair competition,

(3) violation of the Alabama Deceptive Trade Practices Act, and (4) trademark

infringement or unfair competition under Alabama common law.  The court then

addresses the damages, if any, to which Plaintiff is entitled.

## A.    *Default Judgment*

Federal Rule of Civil Procedure 55(a) provides: "When a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."[1]  Upon request of the party entitled to default, Federal Rule of

Civil Procedure Rule 55(b)(2) authorizes the court to enter against the defendant a

default judgment for the amount claimed and costs.

However, an entry of default by the Clerk does not, without more, warrant

the entry of default judgment by the court.  *Nishimatsu Constr. Co., Ltd. v.*

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]  Rather, the court must

find that there is "a sufficient basis in the pleadings for the judgment entered."  *Id*.

The entry of default causes all "well-pleaded allegations of fact" to be deemed

admitted by Defendants.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.

---

[1]The record demonstrates that the Clerk properly entered a default against Defendants.  A process server personally served Defendants on July 11, 2010.  Doc. 2; Doc. 3.  Defendants failed to file a responsive pleading by August 3, 2010, and to date, have not entered an appearance.

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions from the former Fifth Circuit decided on or before September 30, 1981.

1987) (quoting *Nishimatsu*, 515 F.2d at 1206).  The defendant is not, however,

deemed "to admit facts that are not well-pleaded or to admit conclusions of law."

*Nishimatsu*, 515 F.2d at 1206; *see also Alfa Corp. v. Alfa Mortg., Inc.*, 560 F.

Supp. 2d 1166, 1174 (M.D. Ala. 2008) ("Allegations which are well pleaded,

except those pertaining to the amount of damages, are taken as true, and a

defendant cannot later seek to contradict those allegations.").  Accepting the facts

of the complaint as true, the court must determine whether Plaintiff states a valid

cause of action.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370-71 n.41

(11th Cir. 1997).

The court must consider: (1) jurisdiction, (2) liability, and (3) damages.  *See*

*Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).  This

court has diversity and federal question jurisdiction over this case.  Pursuant to 28

U.S.C. § 1332(a), the court has diversity jurisdiction because Plaintiff is a

Delaware corporation with its principal place of business in Maryland, Defendants

regularly conduct business in Alabama, and the amount in controversy exceeds

$75,000.  *See* Doc. 1 ¶¶ 1-3.  Furthermore, pursuant to 15 U.S.C. § 1121 and 28

U.S.C. §§ 1331, 1338, the court has original and exclusive federal question

jurisdiction over Plaintiff's federal trademark infringement and unfair competition

claims.  Additionally, the court has supplemental jurisdiction pursuant to 28

U.S.C. § 1367(a) over the state and common law claims forming part of the same case or controversy.  With respect to personal jurisdiction, Plaintiff asserts that Defendants, who operate the hotel at issue here, regularly conduct business in Alabama.  Doc. 1 ¶ 2.  Therefore, having determined that this court has jurisdiction over this case, the court addresses Defendants' liability for each count.

### 1.    *Federal Trademark Infringement*

Plaintiff's first count alleges federal trademark infringement under 15 U.S.C. § 1114(1)(a).  Doc. 1 ¶¶ 55-64.  Under this section, a person is liable for trademark infringement if he or she, "without the consent of the registrant," "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  "To prevail on a trademark infringement claim, a plaintiff must demonstrate that (1) the defendant used its mark in commerce, (2) without its consent, and (3) defendant's mark is likely to cause consumer confusion or result in mistake."  *Alfa*, 560 F. Supp. 2d at 1174 (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998)).  Furthermore, "the Lanham Act's requirement that a franchisor demonstrate that *unauthorized* trademark use occurred to prevail on the merits of a trademark

infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee." *Robertson*, 147 F.3d at 1308 (emphasis in original).

Plaintiff's complaint satisfies these three requirements.  First, the complaint alleges that Defendants continued to use the ECONO LODGE family of marks in connection with its hotel after Plaintiff sent the Notice of Termination on September 2, 2009.  Doc. 1 ¶¶ 46, 51, 52-53.  Second, the complaint establishes that such use was without Plaintiff's consent:  from August 2009 to October 2009, Plaintiff sent three letters to Defendants, first to warn them that they were in default, then to terminate the franchise agreement, and finally to inform them that they were infringing upon Plaintiff's trademarks.  *Id.* ¶¶ 37, 40, 48.  Plaintiff further establishes that it properly terminated the franchise agreement when Defendants failed to meet their payment obligations.  *Id*. ¶¶ 33, 35-36; *see also* Doc. 1-1 at 24-25 (franchise agreement subject to termination for franchisee's failure to pay fees).  Third, Plaintiff alleges that Defendants' continued use of the ECONO LODGE family of marks is likely to cause confusion, mistake, or deception.  Doc. 1 ¶ 59.  Indeed, it is clear to this court that a member of the public would assume, based upon the use of the ECONO LODGE family of marks, that

9

Defendants' establishment is part of Plaintiff's franchise and is operated and maintained in accordance with the franchise's standards.  *See Robertson*, 147 F.3d at 1310 (noting that franchisee's continued unauthorized use of McDonald's trademarks would result in "a certainty of confusion").  Therefore, the court finds that Plaintiff is entitled to default judgment on its federal trademark infringement claim.

### 2.  *Federal Unfair Competition - False Designation of Origin*

Plaintiff's second count alleges a violation of 15 U.S.C. § 1125(a) for federal unfair competition – false designation of origin.  "To prevail under this section, a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citations omitted).  In *Planetary Motion*, the Eleventh Circuit cited with approval the following test to determine whether a party has established ownership of a mark through its prior use: "[E]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership . . . ."  *Id*. at 1195 (quoting *New*

*England Duplicating Co. v. Mendes*, 190 F.2d 415, 417-18 (1st Cir. 1951))
(footnotes omitted).

Plaintiff alleges a violation of unfair competition pursuant to 15 U.S.C. §
1125(a).  First, Plaintiff establishes that it has prior rights to the marks at issue
through its ownership of the ECONO LODGE family of marks, which have been
used in connection with offering lodging services since at least 1965.  Doc. 1 ¶¶
16-30.  Second, Plaintiff alleges that Defendants have continued, without
authorization, to use these marks in connection with their lodging services in a
manner likely to confuse customers.  *Id*. ¶¶ 47, 51-54, 68; *see Dunkin' Donuts
Franchised Rests. LLC v. Cardillo Capital, Inc.*, 551 F. Supp. 2d 1333, 1338
(M.D. Fla. 2008) (concluding that "[i]t is also clear that using the Dunkin' Donuts
Marks was likely to have caused confusion among customers, who wrongly
believe defendants to be operating a franchised Dunkin' Donuts shop").  The court
therefore finds that Plaintiff is entitled to default judgment on its unfair
competition claim.

### 3.      *Violation of the Alabama Deceptive Trade Practices Act*

Plaintiff further alleges that Defendants' continued use of the ECONO
LODGE family of marks violates the Alabama Deceptive Trade Practices Act
("ADTPA").  Ala. Code § 8-19-1 *et seq*.  The court finds that Plaintiff lacks

standing to bring a claim under the ADTPA.  The section of the ADTPA that

creates a private right of action states in relevant part: "Any person who commits

one or more of the acts or practices declared unlawful under this chapter and

thereby causes monetary damage to a consumer . . . shall be liable to each

consumer . . . ."  § 8-19-10.  The statute further defines "consumer" as "[a]ny

natural person who buys goods or services for personal, family or household use."

§ 8-19-3(2).  Plaintiff is not a natural person and did not purchase Defendants'

goods or services for personal or family use.  *See EBSCO Indus., Inc. v. LMN

Enters., Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (owner of trademarks in

fishing lure names and designs did not have standing to bring a claim against its

competitor under the ADTPA); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F.

Supp. 1393, 1399 (N.D. Ala. 1997) (noting that "[o]nly 'consumers' have rights of

action under" § 8-19-10).  Therefore, the court concludes that default judgment is

not appropriate on Plaintiff's ADTPA claim.

### 4.    *Trademark Infringement / Unfair Competition Under Alabama Common Law*

Plaintiff's fourth count asserts a claim for common law trademark

infringement under Alabama common law.[3]  Doc. 1 ¶¶ 80-83.  "Alabama courts

---

[3]The court reads this count as only asserting a common law trademark infringement
claim.  To the extent Plaintiff also attempts to assert a separate unfair competition claims under

have long recognized a cause of action for unfair competition through imitation of a competitor's trade name." *Alfa*, 560 F. Supp. 2d at 1175 (citing *Fuqua v. Roberts*, 110 So. 2d 886, 887 (1959)).  To prevail on a claim of trademark infringement under Alabama law, Plaintiff must establish "the likelihood consumers will be misled by the similarity of the parties' marks." *Id*.  The test for the state law claim is the same as the test for federal trademark infringement under the Lanham Act, *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F. Supp. 384, 389 (N.D. Ala. 1983), which, as discussed above, Plaintiff has met.  Consequently, the court determines that Plaintiff is also entitled to default judgment on its state law claim for trademark infringement.

## B.   *Appropriate Relief*

Having determined that default judgment is appropriate on three of Plaintiff's four claims, the court now turns to Plaintiff's requested relief.  By defaulting, a party does not admit allegations pertaining to damages; rather, the moving party must prove such damages.  *Alfa*, 560 F. Supp. 2d at 1174 (citations omitted).  Here, Plaintiff seeks (1) a permanent injunction, (2) damages, and (3) attorney's fees and costs.

---

Alabama law, the court notes that "Alabama law does not recognize a common-law tort of unfair competition."  *Alfa*, 560 F. Supp. 2d at 1175.  Therefore, default judgment would be inappropriate for such a claim.

### 1.    *Injunctive Relief*

Pursuant to 15 U.S.C. § 1116(a), a plaintiff may seek an injunction "to prevent the violation of any right of the registrant of a mark" and the injunction "may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days . . . a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." "[A] plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  The Eleventh Circuit has noted that "complete injunctions against the infringing party are the order of the day" in trademark infringement suits.  *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1336 (11th Cir. 1996); *see also Angel Flight*, 522 F.3d at 1209 (same).

All four factors weigh in favor of granting a permanent injunction.  With respect to irreparable harm and the inadequacy of remedies at law, as discussed

above, Plaintiff's allegations establish that Defendants have infringed its trademarks.  The Eleventh Circuit has stated that "trademark infringement 'by its nature causes irreparable harm.'" *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)).  It is similarly recognized that there is no adequate remedy at law to redress infringement.  *Alfa*, 560 F. Supp. 2d at 1177 (citations omitted).  Therefore, the first two factors weigh in Plaintiff's favor.

With respect to the balance of the hardship between the parties, the factor again clearly favors Plaintiff.  Plaintiff's complaint alleges that it is the rightful owner of the trademarks at issue, Plaintiff appropriately terminated the franchise agreement after notice to Defendants, and Defendants have no right to continued use of the trademarks.  In short, Plaintiff is entitled to protect the integrity of its intellectual property.

The fourth factor – the public interest – also weighs in favor of an injunction.  The Eleventh Circuit has emphasized that "the public interest is served by preventing consumer confusion in the marketplace."  *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).  Here, confusion is inevitable given that Defendants continue to use Plaintiff's trademarks, thereby indicating to the public that they operate a properly franchised ECONO LODGE

property.

Therefore, the court GRANTS the permanent injunction and ORDERS: (1) that Defendants are permanently and forever enjoined from using any of the marks in the ECONO LODGE family of marks, including but not limited to, the marks appearing in the '642 Registration, the '814 Registration, the '518 Registration, the '530 Registration, the '688 Registration, the '065 Registration, the '067 Registration, the '199 Registration, or any mark confusingly similar thereto; (2) that Defendants are hereby required to immediately remove all signage and other indicia bearing the ECONO LODGE family of marks; (3) that Defendants are required to deliver to Plaintiff any item bearing any of the ECONO LODGE family of marks; and (4) that Defendants are required **within thirty (30) days** to file a sworn statement of compliance as provided in 15 U.S.C. § 1116(a).

### 2.    *Damages*

A successful plaintiff in an infringement case "shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a). Plaintiff requests recovery of all three – profits, damages, and costs – which are examined below.

16

### a.   *Defendants' Profits*

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."[4]  15 U.S.C. § 1117(a).  At the hearing on damages, Richard Joseph Elliott ("Elliott"), who is the Brand Performance Consultant for Plaintiff in the area in which Defendants' property is located, testified.[5]  Tr. 8:22-9:23.  Elliott explained that, as a regional manager for Plaintiff, he supports the hotels in his region and assists those properties in increasing revenues.  *Id*.  As part of his employment, he reviews financial history reports for each property.  Tr. 12:12-13:3.  After Plaintiff terminated the franchise agreement, Plaintiff no longer had access to financial history reports – or any other revenue report – for Defendants' property.  Tr. 12:20-22.  However, based on the data from the last twelve months for which Plaintiff does have such data, Elliott estimated that Defendants' gross revenue

---

[4]Plaintiff argued in its motion for default judgment that it "does not know, and has no way of knowing, what profits defendants have made by virtue of their infringing activity" and requested an order requiring Defendants to make an accounting and turn over the gross profits received as a result of their infringing behavior.  Doc. 10 at 12.  In its order setting the hearing on damages, the court stated that Defendants would be expected to provide such information if they appeared at the hearing, but emphasized that, on a default judgment, the moving party bears the burden of proving damages.  Doc. 11 at 2 (citing *Alfa*, 560 F. Supp. 2d at 1174).  At the hearing, Plaintiff presented the testimony of Richard Joseph Elliott to establish lost profits.

[5]To permit Plaintiff to obtain the relief sought in an expeditious manner, citations are to the draft hearing transcript.

from the time of default to the present is $142,920.81.  Tr. 15:19-21;  Pl.'s Ex. 2.

Elliott explained that, prior to the termination, an audit at Defendants' hotel

determined that Defendants were under-reporting revenue to Plaintiff, and that

Defendants failed to report approximately $47,000 in revenue.  Tr. 17:16-18:8.

Consequently, Elliott explained that the historical figures may be artificially low.

*Id*.  On the other hand, Elliott agreed that, since the termination, Defendants no

longer receive bookings through Plaintiff's online and telephone services.  Tr.

18:14-19:13.  It is therefore likely that revenues have dropped since the

termination.

Although Plaintiff cannot offer an exact sales figure, the court finds that

Elliott's estimate is well-founded and reasonable.  *See Wesco Mfg., Inc. v.*

*Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987)

("Although the exact amount of infringing sales cannot be determined from the

[evidence], exactness is not required. [Defendants are] in the best position to

ascertain exact sales and profits and it bears the burden of doing so in an

accounting.").  Because Defendants failed to appear to present evidence of costs or

deductions, Plaintiff is entitled to the entirety of the gross revenue figure of

$142,920.81.

### b.    *Plaintiff's Damages*

With respect to damages, § 1117(a) further provides: "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. . . .  Such sum . . . shall constitute compensation and not a penalty."

As evidence of damages, Plaintiff presents the affidavit of Stuart M. Kreindler, who is Senior Counsel for Plaintiff.  Mr. Kreindler states that, as of September 2, 2009, Defendants owed: (1) $7,761.77 in outstanding franchise fees, (2) $521.35 in past due travel agent commission fees, and (3) $3,500.00 for their March 2008 audit.  Doc. 10 at 17 ¶¶ 5-6.  Mr. Kreindler further states that, pursuant to section 10(d)(2) of the franchise agreement, Plaintiff is entitled to $34,200 in lost profits.  *Id*. ¶ 8; Doc. 1-1 at 26.  Section 10(d)(2) provides that Plaintiff's lost profits damages will not be less than $25 multiplied by the total number of rentable rooms multiplied by the number of months until the next date that Defendants could have terminated the franchise agreement without penalty. Doc. 10 at 17 ¶ 7; Doc. 1-1 at 26.  According to Mr. Kriendler, there are 57 rentable rooms at Defendants' property, rendering a minimum monthly lost profits fee of $1,425 ($25 x 57 rooms = $1,425).  Doc. 10 at 17 ¶ 8.  That figure is then multiplied by the number of months remaining between the termination and the

19

next date that Defendants could have terminated the franchise agreement. *Id*. Plaintiff terminated the agreement on September 2, 2009, and the next date that Defendants could have terminated the agreement without penalty was September 28, 2011 (the fifth anniversary of the agreement), which is 24 months later. *Id*.; Doc. 1-1 at 19-20. Thus, the total liquidated damages fee is $34,200 ($1,425 x 24 = $34,200). The sum total of all damages is therefore $45,983.12.

Plaintiff further requests that the court treble the damages. Citing § 1117(a), the Eleventh Circuit has explained that a court "may, in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages, whichever is greater, as justice shall require." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994). The Eleventh Circuit cautioned, however, that "[s]uch an award is discretionary, but it may not be punitive, and must be based on a showing of actual harm." *Id*. (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978)). *Babbit* further states that: "If the infringement is intentional, however, and the use of a counterfeit trademark has been proven, then § 1117(b) governs, and the Court is required to treble damages and award attorney's fees unless the Court finds extenuating circumstances." *Id*.

Plaintiff initially argued in its motion that it was entitled to trebling under § 1117(b). Doc. 10 at 12. Section 1116(d)(1)(B) defines a "counterfeit mark" as:

> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of title 36;
>
> but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

Furthermore, 15 U.S.C. § 1127 defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

At the hearing, the court stated that it was not convinced that Plaintiff had proven the use of a counterfeit mark as defined in § 1116(d)(1)(B).  Specifically, the court noted that Defendants are using Plaintiff's actual marks, not inauthentic copies thereof.  Furthermore, Defendants were entitled to use Plaintiff's marks in connection with their hotel, but they were required to discontinue the use of those marks when Plaintiff terminated the agreement.  *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) ("We agree . . . that § 1117(b) does not apply where, as in this case, a holdover franchisee continues to

use the franchisor's original trademark after the franchise has been terminated. Although the use of an original trademark is without authorization, it is not the use of counterfeit mark."). In its supplementary submission, Plaintiff agreed that a holdover franchisee's continued use of a previously licensed mark does not necessarily constitute use of counterfeit mark, but argued that a discretionary award of treble damages may be appropriate pursuant to § 1117(a). Doc. 14 at 2. Mindful that an award under § 1117(a) should not be punitive, *Babbit*, 38 F.3d at 1183, the court finds that Plaintiff is adequately compensated by an award for lost profits and damages without trebling damages.

### c.    *Costs*

Plaintiff also seeks to recover its costs pursuant to § 1117(a). Under 28 U.S.C. § 1920, only specific costs are permitted, which include "fees of the clerk and marshal." Plaintiff requests: (1) the $350 filing fee for the complaint, (2) the $50 *pro hac vice* application fee for attorney Matthew J. Ladenheim, and (3) the $130 fee for service of process. The first two items are clearly recoverable under the statute. For the third item, the Eleventh Circuit has held that private process server fees may be taxed, so long as the taxable costs of the private process server are limited to the statutory fees authorized by 28 U.S.C. § 1921. *EEOC v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); *see* 28 U.S.C. § 1921 (providing that the

court may tax as costs fees of the marshal for serving subpoenas for witnesses, and

that the court may tax as costs necessary travel, including mileage, and overtime

expenses).  Current regulations provide that "for process served or executed

personally," the United States Marshals Service may collect $55 per hour "for

each item served . . . ."  28 C.F.R. § 0.114 (a)(3).  Plaintiff's process server served

a summons and complaint for each Defendant, for a total of $130.  Because

Plaintiff did not provide a bill or invoice by which the court could determine

whether the process server incurred travel expenses, the court caps the fee at $110.

Therefore, Plaintiff may recover $510 in costs.

### 3.    Attorneys' Fees

Section 1117(a) further provides that "[t]he court in exceptional cases may

award reasonable attorney fees to the prevailing party."  Citing to legislative

history, the Eleventh Circuit has concluded that "exceptional cases are those where

the infringing party acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful'

manner."  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.

1994) (citing H.R. Rep. No. 93-524, 93rd Cong., 1st Sess. (1974), *reprinted in*

1974 U.S.C.C.A.N. 7132, 7133); *see also Welding Servs., Inc. v. Forman*, 301

Fed. Appx. 862, 862 (11th Cir. 2008) (per curiam) (same).

The record before the court demonstrates that Defendants acted in a willful

23

manner – Plaintiff contacted Defendants on three separate occasions, first

notifying them that they were in default, then terminating the agreement, and

finally informing them that continued use of Plaintiff's marks constituted

infringement.  Defendants, who signed the franchise agreement and were thus

presumably aware of their obligations, neither complied nor responded.  Rather,

they continued and, as far as this court is aware, continue still to hold their hotel

out to the public as a properly franchised member of the ECONO LODGE group.

The court therefore concludes that Plaintiff is entitled to attorneys' fees pursuant

to § 1117(a).

To calculate attorney's fees, courts generally calculate a "lodestar" amount

by "multiply[ing] the number of hours reasonably expended by a reasonable

hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citation

omitted).  "A reasonable hourly rate is the prevailing market rate in the relevant

legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*,

836 F.2d 1292, 1299 (11th Cir. 1988).  "The court, either trial or appellate, is itself

an expert on the question and may consider its own knowledge and experience

concerning reasonable and proper fees and may form an independent judgment

either with or without the aid of witnesses as to value."  *Id*. at 1303. (quotation

omitted).

Plaintiff requests attorney's fees for time spent by its national trademark enforcement counsel, Trego Hines & Landenheim PLLC ("THL"), and its local counsel, Lanier Ford Shaver & Payne P.C. ("LFSP").  The rates for THL are: (1) Matthew J. Ladenheim, Partner, $250 per hour; and (2) Katharine W. Lawther, Paralegal, $75 per hour.  Doc. 12 at 10 ¶ 4.  The rates for LFSP are: (1) Angela Holt, Partner, $250 per hour; (2) David J. Canupp, Associate with four years of experience, $200 per hour; and (3) Wendy Stingel, Paralegal, $105 per hour.[6]  *Id.* at 10 ¶ 7; Doc. 12 at 6 ¶ 3.  The court finds that these rates are reasonable and appropriate for the locality, based on the skill and experience of the above individuals.

The court further concludes that the time spent on the case was reasonable. For THL, up to the point of filing the motion for default judgment, Landenheim billed 24.2 hours for a total fee of $6,050.  Landenheim drafted the complaint, researched Alabama law and Eleventh Circuit law, corresponded with local and in-house counsel, drafted the motions for entry of default and default judgment and affidavits in support thereof.  Lawler billed 1.9 hours for a total fee of $142.50.

---

[6]Ladenheim's Amended Declaration states that Ms. Stingel's hourly rate is $105 (doc. 12 at 10 ¶ 7), but Frank M. Caprio's Declaration states that her hourly rate is $75 (doc. 12 at 6 ¶ 3). It is clear from the time records that her hourly rate is $105.

She proofread and edited the complaint and the memorandum in support of Plaintiff's motion for default judgment.  After filing the motion for default judgment, THL incurred an additional $6,183 in fees and expenses, which included 20.6 hours for Landenhim to prepare for and attend the evidentiary hearing, 1.6 hours for Lawler to edit and revise the affidavit regarding attorney's fees, and travel expenses.

For LFSP, Holt billed 16.5 hours for a total fee of $4,198.50.  Holt reviewed the complaint, coordinated with Landenheim regarding local rules, supervised the filing of the complaint, reviewed the return of service, reviewed the motions for entry of default and default judgment, and prepared for and attended the evidentiary hearing on damages.  Canupp billed 0.3 hours for a total fee of $60, and provided advice on methods for enforcing a default judgment.  Stingel billed 3.8 hours for a fee of $398.50.  She prepared the complaint for filing, arranged for service, coordinated with the process server, and e-filed documents.  LFSP also incurred $720 in expenses for an expert witness to opine on the reasonableness of the attorney's fees.

In total, Plaintiff incurred $17,529 in attorney's fees and expenses.  The court finds that this amount is reasonable for a case of this complexity, and for the skill with which counsel prepared Plaintiff's case.  The court therefore awards

Plaintiff $17,529 in attorney's fees.

## III.   CONCLUSION

For the reasons set forth above, Plaintiff's motion is GRANTED.  Plaintiff is entitled to: a permanent injunction as set forth above; $142,920.81 for Defendants' profits; damages of $45,983.12; costs of $510; and attorney's fees of $17,529. Plaintiff's total monetary award is $206,942.93.

DONE this 29th day of October, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE